# United States Court of Appeals for the Federal Circuit

---

**MARVIN FURNITURE (SHANGHAI) CO., LTD.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**
*Defendants-Appellees.*

---

2013-1156

---

Appeal from the United States Court of International Trade in No. 12-CV-0100, Senior Judge Nicholas Tsoucalas.

---

Decided: March 11, 2014

---

JOHN M. PETERSON, Neville Peterson LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was RICHARD F. O'NEILL.

CLAUDIA BURKE, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States.  On the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, PATRICIA M. MCCARTHY, Assistant Director, and CARRIE A. DUNSMORE, Trial Attorney.  Of counsel on the brief was SHANA HOFSTETTER, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

JAMES MICHAEL TAYLOR, King & Spalding, LLP, of Washington, DC, argued for defendants-appellees American Furniture Manufacturers Committee for Legal Trade, et al.  With him on the brief were JOSEPH W. DORN and P. LEE SMITH.  Of counsel was DANIEL SCHNEIDERMAN.

---

Before RADER, *Chief Judge,* PROST, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Marvin Furniture (Shanghai) Co. Ltd. ("Marvin") appeals a final decision of the Court of International Trade sustaining a rescission by the Department of Commerce ("Commerce") of Marvin's new shipper review in connection with an antidumping order on wooden bedroom furniture from the People's Republic of China.  *Marvin Furniture (Shanghai) Co., v. United States*, 867 F. Supp. 2d 1302 (Ct. Int'l Trade 2012).  For the reasons below, we *affirm*.

## BACKGROUND

In 2005, Commerce issued an antidumping duty order on wooden bedroom furniture from the People's Republic of China.  *See Wooden Bedroom Furniture from the People's Republic of China*, 70 Fed. Reg. 329 (Dep't of Com-

merce Jan. 4, 2005) ("the antidumping order"). Pursuant to the antidumping order, importers of subject merchandise who were not individually investigated and assigned an individual rate by Commerce are required to post a cash deposit at a country-wide rate of 216.01%.

Marvin is a Chinese producer and exporter of juvenile furniture. Marvin did not participate in the investigation resulting in the antidumping order and did not export subject merchandise to the United States during the period of investigation. On July 30, 2011, Marvin requested a new shipper review in order to obtain an individual antidumping duty rate and avoid the 216.01% country-wide rate. In its request, Marvin indicated that it had not exported subject merchandise into the United States prior to June 20, 2011.

Based on U.S. Customs and Border Protection data, Commerce determined that exports of subject merchandise manufactured by Marvin had entered the United States on September 8 and September 22, 2010. Commerce requested additional information from Marvin, and Marvin submitted a letter explaining that both entries contained only non-subject merchandise samples for a trade show and that no sales or offers for sale were made. Commerce accepted Marvin's explanation and on August 25, 2011, initiated a new shipper review covering Marvin's exports of subject merchandise entered during the period from January 1 through June 30, 2011. Notice of the initiation of the new shipper review was published six days later in the *Federal Register*. *See Wooden Bedroom Furniture from the People's Republic of China,* 76 Fed. Reg. 54,208 (Dep't of Commerce Aug. 31, 2011).

On August 26, 2011, Marvin submitted additional information to Commerce regarding the September 2010 entries. Marvin explained that the imported goods consisted "primarily" of non-subject merchandise and included some subject merchandise. Marvin continued to

maintain that the goods were samples not entered for consumption or sale.  On August 31, 2011, Marvin notified Commerce that it had discovered that the September 2010 imports were in fact entered for consumption.  Thus, contrary to what Marvin indicated in its initial request[1] for a new shipper review, Marvin's first entries of subject goods were made prior to June 20, 2011.  Marvin nonetheless maintained that the error in its request was harmless because the request was still timely, as it was made within one year of the first entry of subject merchandise.

On January 10, 2012, Commerce preliminarily rescinded Marvin's new shipper review.  *Wooden Bedroom Furniture from the People's Republic of China*, 77 Fed. Reg. 1456 (Dep't of Commerce Jan. 10, 2012).  Commerce determined that, because Marvin's request for a new shipper review did not report the September 2010 entries, Marvin failed to submit a request based on the date and volume of its first entry of subject merchandise.  Commerce therefore concluded that Marvin's request "did not satisfy the regulatory requirements" of 19 C.F.R. §§ 351.214(b)(2)(iv)(A) and (B) and that Marvin was thus not entitled to a new shipper review.  *See* 77 Fed. Reg. at 1458.

In its response to the preliminary determination, Marvin argued that the rescission was improper because it was based on a harmless and unintentional error that did not affect its eligibility for a new shipper review.  Commerce disagreed and made the rescission final on April 10, 2012.  *See Wooden Bedroom Furniture from the People's Republic of China*, 77 Fed. Reg. 21,536 (Dep't of

---

[1]    Although not dispositive to the question of the sufficiency of an initial new shipper review request, it is noteworthy that, after making its initial request, Marvin twice submitted erroneous information concerning the nature of its first shipment.

Commerce Apr. 10, 2012). Commerce reaffirmed that Marvin's request did not meet the requirements of 19 C.F.R. §§ 351.214(b)(2)(iv)(A) and (B) because it did not include data establishing the date and volume of its first entry of subject merchandise. 77 Fed. Reg. at 21,537-21,538.

Marvin filed suit in the Court of International Trade ("Trade Court"), seeking to overturn Commerce's final rescission. The court affirmed Commerce's determination, finding that Marvin's failure to satisfy the regulatory requirements for a new shipper review rendered its request "facially infirm" under 19 C.F.R. §§ 351.214(b)(2)(iv)(A) and (B). *Marvin Furniture*, 867 F. Supp. 2d at 1308. Noting that Marvin was not challenging the legality of any part of § 351.214, the court concluded that Commerce's interpretation of § 351.214 was reasonable, supported by substantial evidence, and in accordance with law. *See id.* Finally, the court also held that 19 U.S.C. § 1677m, which allows a party to correct prior filings, was inapplicable because Marvin's request for a new shipper review was not filed in "response to a request for information" as contemplated under the statute. *See* 19 U.S.C. § 1677m(d).

Marvin timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review decisions of the Trade Court without deference, applying the same standard of review that it applies in its review of Commerce's determinations. *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013). When reviewing Commerce's determinations in an antidumping duty investigation, the Trade Court examines whether the determinations are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). We review the Trade Court's factual

findings for clear error. *Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1364 (Fed. Cir. 2011).

The antidumping duty trade statutes authorize Commerce to impose duties on imported goods that are sold in the United States at less than fair value. *See* 19 U.S.C. § 1673. Once an antidumping duty order covering the goods subject to investigation is in place, Commerce may conduct an administrative review for "new" exporters or producers who did not export the subject merchandise during the period of investigation. *See* 19 U.S.C. § 1675(a)(2)(B). These "new shipper reviews" give exporters or producers whose sales have not been previously examined by Commerce an opportunity to obtain their own individual antidumping duty rates.

Commerce has promulgated regulations that set out the procedures governing new shipper reviews. Pursuant to these regulations, an exporter or producer seeking a new shipper review must include in its initial request documentation establishing:

> (A)  The date on which subject merchandise of the exporter or producer making the request was first entered, or withdrawn from warehouse, for consumption, or, if the exporter or producer cannot establish the date of first entry, the date on which the exporter or producer first shipped the subject merchandise for export to the United States;
>
> (B)  The volume of that and subsequent shipments; and
>
> (C)  The date of the first sale to an unaffiliated customer in the United States.

19 C.F.R. § 351.214(b)(2)(iv).

Marvin argues that Commerce acted unlawfully when it determined that Marvin was ineligible for a new shipper review on the basis that its initial request listed an

erroneous date of first entry. According to Marvin, notwithstanding any deficiencies in its initial request, it satisfied the statutory and regulatory requirements because it did not export subject merchandise during the period of investigation and it made its request for a new shipper review within the one-year regulatory period. Marvin thus contends that it was "eligible" for a new shipper review and that Commerce's determination to the contrary was neither in accordance with law nor supported by substantial evidence.

We disagree that Marvin was "eligible" for a new shipper review. The relevant regulations clearly provide that a new shipper initial request must, among other things, establish the date and volume of the first entry. *See* 19 C.F.R. § 351.214(b)(2)(iv). It is undisputed that Marvin's initial request did not contain this information because it failed to disclose the September 2010 entries and asserted that a later date (June 20, 2011) was the date of first entry. Although Marvin ultimately provided correct information to Commerce, it did so after Commerce had instituted the new shipper review. Hence, the late information did not operate to make Marvin "eligible" for a new shipper review because a review had already been initiated, for a period not covering the September 2010 entries, based on the defective initial request. Accordingly, Commerce's determination that Marvin was not eligible for new shipper review is supported by substantial evidence and not contrary to law.

Marvin argues in the alternative that "eligibility" for a new shipper review depends solely on meeting the conditions provided in the statute: not having exported the subject merchandise during the investigation period or being affiliated with someone who did. *See* 19 U.S.C. § 1675(a)(2)(B)(i)(I)-(II). According to Marvin, Commerce's regulation imposing additional eligibility requirements improperly limits Marvin's statutory right to obtain a new shipper review. In other words, we are faced

with the question of whether Commerce's rescission of Marvin's new shipper review on the basis that the initial request did not include the date and volume of the first consumption entry was a proper interpretation of the statute under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Under the *Chevron* framework, we first must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Here, the "precise question at issue" is whether Commerce may rescind the initiation of a new shipper review on grounds that the initial review request failed to establish the correct date and volume of the first entry of subject merchandise. Our review of Section 1675 indicates that Section 1675 does not address this precise issue. Therefore, our next question is "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If Commerce's interpretation is reasonable, *Chevron* requires us to accept the agency's construction, "even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). As discussed below, we hold that Commerce's interpretation of the statute is reasonable.

Congress left it to Commerce to establish the procedures necessary to conduct new shipper reviews. The statute mandates that Commerce "shall" establish, within the prescribed amount of time, an individual duty rate for an exporter or producer who has demonstrated that it did not export subject merchandise during the period of investigation or was affiliated with someone who did. *See* 19 U.S.C. § 1675(a)(2)(B)(i)-(ii). The only procedural requirement imposed by the statute is that Commerce make its preliminary and final determinations within the time limits of § 1675(a)(2)(B)(iv). To fulfill its mandate, Commerce exercised appropriate authority to promulgate the procedural requirement that the request for a new

shipper review establish the date on which the goods covered under the outstanding antidumping duty order first entered the U.S. market for consumption. *See Nat'l Cable*, 545 U.S. at 982 ("*Chevron's* premise is that it is for agencies, not courts, to fill statutory gaps.").

Here, given that Commerce must conduct a new shipper review within a determined amount of time, it is reasonable for Commerce to require data on a new shipper's first entry of subject merchandise as a prerequisite for initiation of a new shipper review. As the Trade Court noted, the required information "provides the basis upon which Commerce can undertake the review and calculate an individual dumping rate." *Marvin Furniture*, 867 F. Supp. 2d at 1308. Requiring that such fundamental information be included in the initial request not only assists Commerce in fulfilling its statutory obligation to conduct a review in a timely manner, it also ensures that a new shipper review is initiated, and that an individual rate is accurately determined, on the basis of all relevant entries.

The one-year regulatory period also ensures that new shipper reviews are granted to exporters and producers that are entering the U.S. market for the first time. These are the only exporters and producers that are entitled to receive the statutory benefit of being able to post a bond and avoid paying cash deposits during the course of a review. *See* 19 U.S.C. § 1675(a)(2)(B)(iii). Accordingly, we see no reason why this Court should revise Commerce's requirements for instituting new shipper reviews. Commerce's treatment of the documentation required under 19 C.F.R. § 351.214(b)(2)(iv) as an eligibility requirement is reasonable, and its rescission of Marvin's new shipper request is not contrary to law.

Marvin argues that its failure to comply with the regulation was harmless error because the only purpose of requiring documentation is to determine compliance with

the one-year requirement, which Marvin argues it still met even considering the September 2010 entries. We disagree. The error was not harmless because it led Commerce to institute the new shipper review for a period from January 1 through June 30, 2011. The September 2010 entries could not have been investigated because they were outside the period of review. Regardless of whether the error was unintentional or not, the result was the institution of a new shipper review covering less than all relevant entries necessary to determine an accurate individual rate. We agree with the Trade Court that Commerce did not err in applying the express provisions of the regulation and determining that a "facially infirm" request is proper grounds for rescinding a new shipper review.

Finally, we affirm the Trade Court's determination that 19 U.S.C. § 1677m is inapplicable because Marvin's request for a new shipper review was not filed in "response to a request for information." *See* 19 U.S.C. § 1677m(d) (providing that Commerce shall provide an opportunity to remedy deficient submissions if "a response to a request for information . . . does not comply with the request"). Marvin's defective initial request was filed of its own accord.

CONCLUSION

We hold that Commerce's rescission of a new shipper review based on a failure to establish in the initial request for the review the correct date and volume of first entry of subject merchandise is a reasonable interpretation of the statute and its regulations, and a proper exercise of Commerce's regulatory authority. The Trade Court's decision affirming Commerce's rescission of Marvin's new shipper review is

**AFFIRMED**

Costs

Each party shall bear its own costs.